May it please the Court, Sean O'Keefe, appearing on behalf of U.S. Philips Corporation. I'd like to reserve three minutes for rebuttal. The KBC Bank's arguments and the ruling by the lower court essentially require this Court to accept two untenable propositions. The first proposition is that a transfer made in violation of an injunction is cleansed once it gets into the hands of the intended transferee, even where the transferee knows that the incoming transfer is in violation of the injunction. In a universe where, with the press of a button, millions or hundreds of millions can be transferred, that is an absolutely untenable provision, proposition. The second proposition is that any transfer made in violation of an injunction must be actually recovered before the injunction expires. Otherwise, the transfer is immunized. Now, in the remand of January 12, this Court made it clear that that is not the law, that we retained the right to go after those transfers. The lower court ruled in direct... it took a position directly contrary to the remand. This Court stated that we had the right to seek the recovery of all violative transfers during the period of the TRO and the preliminary injunction, and that is exactly what we did. The term of the TRO, that issue, we addressed it in the papers. It was extended. It was in 10 days. The Court had the discretion to do that under 65B. I would also note that 1.6 million of the 1.8 million we are after was transferred within 10 days, the first 10 days. KBC Bank had fair notice. It's important for the Court to realize that KBC Bank received two orders, two orders on the first, one from California and one from Nevada. Those orders were explicit. The purpose of those orders, the very first paragraph stated, these people are violating the law. They are liquidating assets to place it out of those possessions. In that order, it barred all parties from directly or indirectly taking a series of conduct that would make the assets unavailable to folks. That's exactly what happened. Did you ask for an evidentiary hearing before Judge Reel in order to determine whether KBC could hold onto the funds or transfer them after it received them? Because I understand the prior mandate to have required an evidentiary hearing on who was entitled to hold those funds. Yes, Your Honor, we did. And we filed our motion and a hearing was held. And on all the points in this Court's order, it was undisputed. It was undisputed. They received notice. The judgment letters were before the Court, so the Court had both in rem and in persona of jurisdiction. They knew about it. They don't dispute it. In the exercise of record, their attorney acknowledged receiving it. They had faxed conference. That was never disputed. They received it, and then did they freeze it once they received it or did they transfer it out? Your Honor, there is no evidence that they transferred it out. They contend that they sequestered it. However, the record is not clear on that. But from our perspective, it is, as the prior panel noted, in receiving the funds with knowledge of the fact that you could not do so, you allowed the transfer to occur. The issue for us is the remedy. Is this Court prepared to accept the concept that this particular kind of inveterate contemnor, and that's why I introduced the Nevada order, because the Court goes through pages of what these people were doing. They went to jail for it, and they would. Which people are you referring to? The KXD defendants. They were put in jail in the middle of the night. They're not the alleged contemnor here. We're talking about the bank. But the bank, when it received those orders, knew exactly what the district court was borrowing. So because you believe that this was an unlawful transfer by KXD, then that means that the bank isn't entitled to keep them. Absolutely. In fact, that concept is captured not just in injunction law. It's in trust law. And, in effect, when an injunction goes into place, the totality of the assets is frozen, is, in effect, in a trust. Let me ask you this, Mr. O'Keefe. It seems to me, as I'm trying to figure this out, that there are two things going on here. One is, did the bank violate the order? And the second question is, who's entitled to the money? And it seems to me it's possible to say that when the account is ordered frozen, you could interpret that to mean they're not allowed to let any disbursements go out, but that it didn't necessarily prohibit money from coming in. That seems to me a possible way you could interpret that. And so, if so, they would not be in contempt for receiving money. That's a separate question from whether the bank has a superior right to the money vis-à-vis the plaintiff. Your Honor, the standard is that you take all reasonable steps to ensure compliance. Anybody reading those orders would know, as the prior panel made clear, you need to close the door. You need to stop. Stop what? The transfer. Well, is that money going out or money coming in? It's coming in. Where does it say you can't receive money? I mean, I can see where you could interpret it to say you can't allow disbursements. Where does it say you can't receive it? Your Honor, the order says, directly or indirectly transferring, distributing, disposing of, shipping in any way or otherwise hiding assets, and making unavailable to plaintiff. I don't see where it says the bank, shall receive any funds on behalf of the depositor. Your Honor, you have to look at the totality of that language and also the fact that the injunction goes on to say these are the only transfers that are allowed. So no money can go out. To do a transfer, it's like There's no way it can go out. It doesn't say no money can come in. Well, but we're talking about transfers by the judgment getter of assets that they had into the bank who was their preferred creditor because there was a guarantee. And that's what they were trying to do. So by transferring them out, they made them unavailable to fill-ups. Because then the bank could, as they are now, saying, we are retaining a possessory loan. That's why I say the bank may not be in contempt, but that doesn't mean the bank is entitled to keep the money. Those are two different things. Right. So, yes, I think Judge Silverman is exactly right in this. So you want a finding on whether or not the bank could exercise a banker's lien over the funds transferred unlawfully by the KXD defendants. That doesn't necessarily mean that the bank is in contempt, but it could mean that the bank cannot keep those funds just because they had them and they were in the KXD defendants' accounts. For us, the remedy is the penultimate objective, obviously. We did what we were supposed to. We obtained an injunction. But when we speak of contempt, since there is no intent, a party can be in contempt by mistake. And in here, we're not trying to attribute any wrong to the bank. We're simply saying they were the recipient of the pass when the judge said you can't accept the bank. And they took it and they took it and they took it. And now they're here to effectuate the transfer that this bad group wanted. They wanted to pay this bank for a reason. They wanted to keep that money away from our client. And that's why we got the injunction. And they knew they couldn't take the money. It just strikes me that you basically are bringing a garnishment, seeking a garnishment remedy in the close of a contempt. And what really, if the order is ambiguous and they're not in contempt, what you really need to do would be to serve them with a writ of garnishment. They come in and answer it. They defend it saying the money is not theirs, it's ours, whatever it is. And then you're off and running. And then you'll get a ruling on whether their lien is superior to your claim. Go ahead and answer, Mike. I would say to the court this. To effectuate the order, we have to bring things back to they were before the order was violated. Otherwise, the order is meaningless. I mean, the purpose of the contempt motion is not to punish the bank, but just to bring it back to where we were at the starting place. So the order is effectuated. So that was the means to do that. We're not trying to say it's a bad bank. We're simply saying you were, knowingly or unknowingly, the entity that effectuated the transfer since it's a transfer or a transferee. And so the money has to come back. Why didn't you bring the contempt against the KXT defendants? Well, Your Honor, we did in Nevada, and we put them in jail. And they still didn't stop. They wouldn't bring back the money. Even when the orders were in place, they were taking inventory out of the warehouse in the middle of the night. They were completely defiant of all judicial power. So there was nothing we could do. Counsel, I still find it difficult to believe that the bank couldn't accept funds and then freeze those funds, not let them go out, but just to hold them. Your Honor, the end result of that position is the bank takes the position that once they receive them, it's their funds. So the contemnor gets what it wants, which is I paid my preferred creditor, which is always going to be the case in this universe. They're always going to want to pay somebody, whether it's their mother-in-law or the bank or somebody else. But it's your contention that they're going to misbehave after they get these funds. And I would think the injunction could protect you at that point. They get the funds, they freeze them, period. But in essence, they are, as you would say, misbehaving in that the transfer, as effectuated, enables the contemnor to get the money in the hands of their preferred creditor. You're saying they're acting in collusion to violate the order. To the extent that the court validates their lien, yes. That's what I'm saying. Maybe they don't have a lien. That's it for another day. They may have no lien. You may have a superior right to the money. That doesn't mean they're in contempt. It means you have to fight this out in a different form. Contempt isn't the remedy. Garnishment is a remedy or some other remedy. But it's not contempt. But this court, as the district court, has the power to grant relief. I mean, we ask for and all other relief. That's when actually one of the issues that the judge was supposed to determine upon remand was who had the superior right. Isn't that right? The lower court validated the lien by accepting the concept that the transfer could be made. So if this court says, no, the transfer has to go back from a legal determination to ground zero. No transfer was made. So where were you then? That restarts the clock in a way that at a minimum preserves the rights of the parties, as contemplated by the asset presider. The contemptible shouldn't get the benefit of the law. Thank you. You're out of time, sir. Ready for the appellee? Good morning, Your Honors. Excuse me. James Andriola on behalf of KBC Bank from Reed Smith, the appellee herein. I just want to clarify right off the bat that the district court has now on three separate occasions ruled that KBC Bank's right of set-off is superior, has priority to any rights that U.S. Phillips has as either a potential judgment credit or now an actual judgment credit. Where has it ruled that? Well, we first moved to modify the original motion to modify the TRO to allow the bank to apply its right of set-off. It was granted in our favor. And then they moved to reconsider. The district court again denied that and reaffirmed our right. And then after being remanded back from the Ninth Circuit. So then there was an appeal. And then the Ninth Circuit said that there was an open question as to whose claim is superior at this time because material issues of fact remain unanswered. And it dropped a footnote and cited to a case that said that, you know, there was no way to determine whether the bank's claim to funds is superior to the petitioner's claim short of a remand. Extensive further briefing and probably further fact-finding. Did that happen? Yes, Your Honor. We had they moved for contempt. We had extensive briefing. When the district court issued its decision, which is at page 282, 283 of the excerpts of the record, he states, quote, Therefore, the court's determination of KBC Bank's right of set-off is superior to the rights of the plaintiff's stands. He was reaffirming his prior rulings on that exact issue. That issue has been dealt with, and I think they acknowledged it, and that's why they tried to come at it with a new angle. They actually came up in a very interesting give-and-take during the last oral argument before this court, is we're going to take another run and say they violated the order. And I think this court truly gets those issues. So what we need to decide is whether the district court was correct in determining that KBC Bank's right to set-off is superior. Really, I think it's even more narrow. I mean, you can certainly affirm that the judge's ruling on that issue. You could also reverse it. Exactly. But all they've really appealed at this stage is the issue before this court today is whether the judge abused his discretion in finding that the bank did not violate the order. And we think the factual record before you makes clear that the bank complied with both the form, substance of the order. So if we were to hold just that, they're not in contempt for violating the order? That should be the end of this case once and for all. Well, but we wouldn't be passing on whether the bank has a superior right to the funds. We would just say they didn't violate the order. I don't know to the extent they've – there's ample material in our briefing to support the bank's right of set-off. That may be, but I'm trying to – you just said the only thing we have to decide is did the bank violate the order in receiving the money. That strikes me as a separate question from whether the bank's right is superior to the plaintiff's right. We could affirm Judge Real and just say he's right, they didn't violate the order. Freezing didn't mean he can't receive it. Correct. It doesn't mean you get to keep it. It just means you didn't violate the order. No, I think you would either affirm his finding that the bank has a superior right or reverse it. That wasn't really – it really wasn't properly before him to make that finding, that the bank can keep it on a contempt motion. That was the third time we briefed those issues to that judge. See, when the bank – the bank froze the – the wires came in, bank freezes them. Are the funds still frozen in the bank? No, at this point they applied. Based on the judge's initial ruling, the bank was allowed to apply those funds to the indebtedness of the defendants. We went to the court and we said, Judge, we froze these funds. We want your permission to apply a right of set-off. The judge granted that motion. They moved to reconsider. He granted – he denied that motion again, reaffirming our right to set-off. We reversed that. We reversed that and said, no, you have to go make a determination and you have to answer all these questions. And Judge Real didn't do that. He just said they have the right without any determination about whether or not the bank lawfully received the funds from the KXD defendants or whether the KXD defendants transferred the funds to the bank that was a violation of the injunction, rendered it an unlawful transfer, and thus undermining the bank's lien. I feel like we've addressed this on three different sets of briefs to Judge Real, and each time he's ruled in the bank's favor on the right of set-off. Right, but he was reversed and a mandate went out in between saying do something else and he didn't. But he wasn't reversed on his ultimate finding. He was reversed on the issue that his ruling was – it addressed an order that had been – we moved to modify a preliminary injunction. The preliminary injunction had expired. We argued to the Ninth Circuit, well, their whole appeal is moot at this point. They said go back down to the district court because the order that he modified didn't exist at the time he modified it. But they made no such ruling that – with respect to the rights of the parties to the funds. What do you make of this statement in the prior decision? Our holding does not affect Phillips' continuing ability to seek damages through contempt proceedings for any violations of the tariff and preliminary injunction that may have occurred while those orders were in effect. It seems that that's what Phillips has been doing is trying to use contempt proceedings to get their damages. Well, exactly. Right. And they went back to the district court and said, listen, they violated your order or your predecessor's order by freezing the funds. And the judge said, no, they froze the funds. That's what the order told them to do. Right, and that's the only issue before us. Did they violate the order by receiving the funds? Correct. So, I mean, that seems to me to have no cause to opine on who has the superior right to the funds. It's just simply that they didn't violate the order by receiving them. Correct. Exactly. I'm here just to conclude to ask you to affirm Judge Rios – affirm his finding of a lack of contempt on the part of the KDC Bank. Let me just, again, think out loud. If that's what we were to do, I suppose there's nothing that would stop them from serving a writ of garnishment on the bank by saying you're holding money that belongs to our client, and the bank would answer and say it's not your money, it's our money, and then you get a definitive ruling. They'd be left to their rights and remedies, yes. But the motion here was a motion for contempt. Exactly. It was clear the bank did not violate the order by freezing assets that it was told to freeze. Actually, at this point, if the bank has proceeded to apply the money to its bankers to fund the bankers' lien, then Phillips would have to file a new lawsuit against the bank, acting that you acted unlawfully, and then you would hold up Judge Rios' order that said no res judicata or claro estoppel. Judge Rios determined that the bank had the superior rights, and that's the end of it. Isn't that right? Yeah. I'm sure they'll find a creative way to do it. I know. I know. But wouldn't you hold up Judge Rios' order where he said that the bank had the superior right? Yes, I would. And I would hold up the mountain of law and history of a bank's right of set-off being always taken priority over a subsequent judgment? Unless it's an unlawful transfer. I don't – there's no – Yes, there is. Okay, I think we're – okay. Thank you, Your Honor. Okay, thank you. Mr. O'Keefe, you've got one minute. You went over your time, but we'll give you a minute. I would simply note to Your Honor's statement, that's the issue, and that's the nexus between the two. An unlawful transfer, and that's what the prior court noted. You wanted to take the deposit. I'm reading from the transcript. You wanted to take the deposit so that you could apply your lien to it, right? So you knew you were going to do that or should have known that, and you said, hooray, we've got the wires showing that they're being deposited. Let it be deposited so we can put our lien on it. But at the time you did that, you were under either the TRO or an injunction saying do not allow transfers. If the court makes a ruling saying that a contemnor can transfer money to a bank, a preferred creditor or his mother-in-law or anybody else, and then they get that possessory lien on unlawfully transferred funds, that destroys the injunctive policy. So what I'm asking the court to do is to say a transfer to a party that knows that that transfer is enjoined, you cannot place a bankers lien on it because it's unlawfully transferred funds. Otherwise, in a case like this, they will simply transfer. Thank you. Thank you. Thank you. Thank you, too. The case has started. You can submit it. Good morning. 10-55968, Piero v. Speed of Development. Each side will have 10 minutes.
judges: Fletcher, Silverman, Wardlaw